UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:21-cv-00247-FDW

| | |
|---|---|
| TREVOR DAVIS, | ) |
| Plaintiff, | ) |
| vs. | ) ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

THIS MATTER is before the Court on Claimant Trevor Davis's Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 13, 14), and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("Commissioner") Motion for Summary Judgment and Memorandum in Support (Doc. Nos. 15, 16). Claimant, through counsel, seeks judicial review of an unfavorable administrative decision that he was not disabled within the meaning of the Social Security Act. Having reviewed and considered the written arguments, administrative record, and applicable authority, and for the reasons set forth below, Claimant's Motion for Summary Judgment is DENIED; the Commissioner's Motion for Summary Judgment is GRANTED; and the Commissioner's decision is AFFIRMED.

**I.    BACKGROUND**

In October 2018, Claimant filed a claim for a period of disability and disability insurance benefits under title II, and supplemental security income under title XVI, of the Act. (Tr. 15). Claimant's alleged onset date is January 1, 2016. Id. Claimant's claims were denied initially and on reconsideration. Id. The ALJ held a hearing in September 2020, at which Claimant, an attorney

1

representative, and an impartial vocational expert (VE) appeared. Id. On November 10, 2020, the ALJ decided Claimant was not disabled within the meaning of the Act from January 1, 2016, through the date of his decision. (Tr. 207).

In particular, the ALJ found at step one that Claimant had not engaged in substantial gainful activity since January 1, 2016, and at step two that Claimant had the following severe impairments: gout, osteoarthritis, hypertension, diabetes mellitus 2, congestive heart failure, and degenerative disc disease. (Tr. 18). The ALJ also found that Claimant had "mild limitations" in "understanding, remembering or applying information;" "interacting with others;" "concentrating, persisting or maintaining pace;" and "adapting or managing oneself." (Tr. 18). Before proceeding to step four, the ALJ found that Claimant had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> he can occasionally lift and/or carry, including upward pulling, twenty pounds and can frequently lift and/or carry, including upward pulling, ten pounds. The claimant can sit for six-hours in an eight-hour workday with normal breaks and stand and/or walk with normal breaks for four hours in an eight-hour workday, but no greater than thirty minutes at one time with the ability to sit or change position for a few minutes without being off task. There is no limitation in the claimant's upper extremities for gross or fine handling. The lower extremities are limited to occasional use of foot controls. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel and crouch but never crawl. He should perform no work at ladders, ropes or scaffolds, unprotected heights or around dangerous machinery. He should not have frequent exposure to extreme cold or heat.

(Tr. 21).

The ALJ found at step four that Claimant was unable to perform any past relevant work, (Tr. 29), and at step five that jobs existed in significant numbers in the national economy that Claimant could perform considering his age, education, work experience, and residual functional capacity. (Tr. 30). Thus, the ALJ decided that Claimant was not disabled within the meaning of

2

the Act from January 1, 2016, through the date of the November 10, 2020, decision. (Tr. 31). On March 23, 2021, the Appeals Council denied Claimant's request for review, making the ALJ's November 2020 decision the Commissioner's final decision. (Tr. 1). Claimant has exhausted all administrative remedies and now appeals to this Court pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The district court does not review a final decision of the Commissioner *de novo.* Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). The court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

The Fourth Circuit has defined "substantial evidence" as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Richardson, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the

3

responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.")

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212, (4th Cir. 2017) (per curiam) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520(a)(4). Pursuant to this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. 20 C.F.R. § 404.1520(a); see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio, 780 F.3d at 634); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

"If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" Lewis, 858 F.3d at 861–62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996

4

WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).

> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets his burden as to past work, the ALJ proceeds to step five.

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations."

Monroe, 826 F.3d 176, 180 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429). If the Commissioner meets this burden in step five, the claimant is deemed not disabled and the benefits application is denied. Id.

### III. ANALYSIS

Claimant identifies five assignments of error on appeal: 1) the ALJ failed to perform an analysis of Listing 4.04C; 2) the ALJ failed to properly evaluate the medical opinion evidence; 3) the ALJ erred in his treatment of Dr. Valedon's prescription of a walker; 4) the ALJ erred in his evaluation of Claimant's limitations stemming from his heart problems; and 5) the structure of the SSA is constitutionally invalid.

A.  Constitutionality of Commissioner's Decision

As a preliminary matter, the Court concludes the Commissioner's decision was not constitutionally defective. The Supreme Court has rejected the proposition that unconstitutional tenure protection for the head of an agency, without more, voids any agency action. See Collins v. Yellen, 141 S. Ct. 1761, 1787 (2021). Specifically, the Supreme Court explained, "the unlawfulness of [a] removal provision does not strip [a federal official] of the power to undertake the other responsibilities of his office." Id. at 1788 n.23. After Collins, "courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand" absent some causal nexus to the ALJ's decision not to find a particular claimant disabled. Katrina R. v. Comm'r of Soc. Sec., 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (collecting cases); see also Juliana Jolean A. v. Kijakazi, 5:20-CV-1268, 2022 WL 595361, at *4 (N.D.N.Y. Feb. 28, 2022) (collecting cases). Claimant's apparent argument—that an unconstitutional delegation of authority from the Commissioner to the ALJ demonstrates harm—lacks merit under Collins. See Harris v. Kijakazi, No. 21-1853, 2022 WL 2987928, at *3 (4th Cir. July 28, 2022) (rejecting constitutional claim where the claimant failed to demonstrate actual harm).

Here, Claimant argues that the SSA's structure is unconstitutional resulting in the denial of a constitutionally valid adjudication. Claimant, however, offers no evidence to show his case would have been decided differently but for the removal restriction. Claimant theorizes a general harm rather than one "particularized to Claimant," Kaufmann, 32 F.4th at 850, and courts have found such generalized harms to be insufficient under Collins. Willis v. Kijakazi, No. 4:21-CV-60-M, 2022 WL 4242523, at *15 (E.D.N.C. Aug. 19, 2022) (collecting cases), report and recommendation adopted sub nom. Willis v. Kijakazi, No. 4:21-CV-00060-M, 2022 WL 4238060 (E.D.N.C. Sept. 14, 2022). Accordingly, Claimant has failed to show a causal nexus between the removal restriction and the denial of his application for disability benefits. Therefore, Claimant's constitutional arguments fail.

B.   Analysis of Listing 4.04C

Claimant argues the ALJ's decision should be remanded because the ALJ did not sufficiently address Listing of Impairment ("Listing") 4.04C when he concluded Claimant's ischemic heart disease does not meet the requirements of that Listing. The Commissioner argues the record supports the ALJ's explanation that Claimant failed to prove he meets all of the required elements for the Listing.

The ALJ must consider the medical severity of a claimant's impairments and will find a claimant disabled if he has any impairment (or combination of impairments) that both meets the duration requirement and meets or medically equals one of the impairments in the Listings. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926. Meeting only some of the criteria means a Listing is not met, no matter how severe the condition. 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3); Sullivan v. Zebley, 493 U.S. 521, 529 (1990) ("For a

7

Case 3:21-cv-00247-FDW   Document 18   Filed 09/26/22   Page 7 of 14

claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria") (emphasis in original). The ALJ should identify relevant Listings and compare the criteria to the evidence. See Radford v. Colvin, 734 F.3d 288, 294-96 (4th Cir. 2013); Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir. 1986). On appeal, the Court must read the ALJ's decision as a whole, potentially affirming based on conclusions that relate to the step three finding, even though they may be found elsewhere in the decision. Keene v. Berryhill, No. 17-1458, 732 F. App'x 174, 177 (4th Cir. May 2, 2018).

In order to meet Listing 4.04C, a Claimant must demonstrate, among other requirements, angiographic evidence showing narrowing of arteries "*[r]esulting* in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. part 404, subpart P, app. 1, § 4.04C (emphasis added). Here, the ALJ's decision concludes Claimant's ischemic heart disease does not meet the Listing "because there is no evidence of narrowing of the coronary arteries *causing* very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." (Tr. 20 (emphasis added)). Unlike the ALJ in Radford, the case upon which Claimant relies, the ALJ here did not simply provide a generic reference to the Listing, but instead specifically noted what evidence was lacking in order to satisfy that Listing: insufficient evidence showing the narrowing of the arteries caused serious limitations in Claimant's activities of daily living. In other words, the ALJ's decision includes the explanatory discussion necessary to facilitate this Court's review of that finding.

Substantial evidence supports the ALJ's conclusion. For example, the ALJ discussed evidence that Claimant could manage his finances and take care of his then-four-year-old grandson, which does not suggest "very serious limitations" for activities of daily living. (Tr. 19,

8

22 (citing Tr. 424, 426, 435)). In addition, the ALJ discussed numerous treatment notes and examination findings supporting the conclusion that Claimant's daily activities were not so significantly impaired as to meet Listing 4.04C. (See, e.g., Tr. 23 (citing Tr. 2016 as evidence of Claimant's use of a walker but contrasting that use with generally normal examination findings), 25 (discussing undated evidence at Tr. 2170 of a service providing assistance to Claimant as being inconsistent with other medical evidence in the record, such as September 2020 treatment notes, (Tr. 2160-2162), indicating injection therapy, normal gait)).

Evidence also shows Claimant experienced some degree of limitation in this area, and the ALJ acknowledged this, including the discussion of abnormal medical findings, evidence from a service that provided assistance in Claimant's home, and Claimant's own testimony. (See, e.g., Tr. 21-22, 25.) However, the ALJ balanced that evidence against the record, concluding that medical findings and other evidence demonstrated Claimant did not have the "very serious" limitations required to meet the Listing's requirement for ischemic heart disease. (Tr. 20, 25-26).

In sum, Claimant seeks to have this Court set aside the ALJ's findings and substitute its own conclusions regarding the evidence in the record. This runs afoul of this Court's limited standard of review. Keene v. Berryhill, 732 F. App'x 174, 177 (4th Cir. 2018) ("This court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. There were a number of conflicts in the evidence here, and we do not second guess the ALJ in resolving those conflicts."); see also Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) ("In reviewing for substantial evidence, we do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as

9

to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." (internal quotations and citations omitted)). Here, the ALJ adequately explained his reasoning as to why Claimant did not satisfy the Listing5, and substantial evidence supports that decision.

C.     Medical Opinion Evidence

Next, Claimant contends the ALJ improperly rejected medical opinions from Claimant's treating cardiologist Dr. Sutton and state agency medical consultant Dr. McGuffin and, instead, substituted his own lay opinion. The Commissioner argues the ALJ adequately explained why the opinions of these two doctors were not persuasive.

In evaluating the Commissioner does not give any specific evidentiary weight, including controlling weight, to any medical opinion. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner considers medical opinions by evaluating them against multiple factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The first two factors, supportability and consistency, are the most important in determining persuasiveness, and the Commissioner is not required to explain the consideration of the other three factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Here, the ALJ addressed problems with the supportability and consistency of Dr. Sutton's and Dr. McGuggin's opinions. For example, the ALJ criticized Dr. Sutton's use of a "check and fill in the blank" form containing conclusory and speculative opinions based on limited appointments with Claimant every four to six months—which the ALJ found to be not indicative

10

of symptoms of concern. (Tr. 27). The ALJ also indicated Dr. McGuffin's opinion explaining that it is inconsistent with other medical evidence, to which the ALJ specifically cited.

Although Claimant disagrees with the ALJ's evaluation of these opinions, this Court is concerned only with whether the ALJ applied the proper legal standard and whether the ALJ's decision is supported by substantial evidence. Under this deferential standard, the ALJ's evaluation of the opinions of Dr. Sutton and Dr. McGuffin must be affirmed.

D.  Dr. Valedon's Prescription of a Walker

Claimant argues the ALJ improperly concluded, "Although Dr. Valedon recently prescribed a walker (Exhibit 16F at p. 629), this was done in response to a recent hospitalization for treatment of malignant hypertension and pulmonary edema that resolved before he was discharged (Exhibit 13F at p. 65)." (Tr. 25). Claimant argues that contrary to this finding, Dr. Valedon prescribed the walker for "99 months" due to a chronic heart issues. The Commissioner argues the record supports the ALJ's statements that: a walker was prescribed only for limited purposes; and the evidence in the record did not reflect the gait abnormalities or mobility or ambulatory deficits that might have required the use of an assistive device. (Tr. 24-25, 27).

The explanatory discussion the ALJ supplied in support of his residual functional capacity finding made references to multiple treatment notes and examination findings regarding Claimant's ability to ambulate, including evidence of normal gait or normal muscle strength and tone. (Tr. 25 (iting Tr. 512 (normal gait and muscle tone), 525 (same), 869 (same), 915 (normal range of motion despite tenderness), 2016 (normal range of motion despite tenderness and use of a wheelchair), 2162 (normal gait and range of motion))). Notably, evidence dating from September 2020, just three months after Claimant received a June 2020 prescription for a walker, (Tr. 2017),

11

his gait was normal. (Tr. 2162.) This discussion defeats Claimant's argument that the ALJ should have relied upon other evidence in the record to reach a different conclusion. As with other arguments, this claim would require this Court to reject the ALJ's discussion of the evidence and accompanying findings of fact and substitute Claimant's views on the evidence instead. This would exceed the scope of this Court's review. As this Court has repeatedly stated, it is the ALJ's role to weigh the evidence and resolve conflicts; even if this Court were to disagree with the ALJ's findings, those findings cannot be set aside so long as they are supported by substantial evidence. See, e.g., Goforth v. Kijakazi, No. 1:21-cv-00080-KDB, 2022 WL 567842, at *2 (citation omitted).

E.     Claimant's Limitations

Finally, Claimant argues the ALJ's RFC assessment did not sufficiently account for his cardiac impairment. The Commissioner argues the ALJ provided the appropriate explanatory discussion of how all of Claimant's impairments, including his cardiac impairment, affected his ability to work. (Tr. 21-29.). Claimant has failed to show substantial evidence does not support that discussion.

RFC is an administrative assessment of the *most* an individual can do despite the limitations caused by physical and mental impairments. See Lewis, 858 F.3d at 861–62; 20 C.F.R. §§ 404.1545(a), 416.945(a). Plaintiff bears the burden of providing evidence establishing the degree of his impairment. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ bears sole responsibility for assessing a claimant's RFC. 20 C.F.R. §§ 404.1545(c), 416.945(c).

In making the RFC, the ALJ must consider the functional limitations resulting from the claimant's medically determinable impairments. SSR 96-8p, 1996 WL 374184, at *2. But the ALJ is not obliged to precisely mirror any particular piece of evidence, or even to discuss every piece

12

of evidence in the record. See Reid v. Comm'r of Soc. Sec'y, 769 F.3d 861, 865 (4th Cir. 2014) (citing 42 U.S.C. § 405(b)(1)); Felton-Miller v. Astrue, 459 F. App'x 226, 230-31 (4th Cir. 2011) (explaining that an ALJ should base an individual's residual functional capacity on all available evidence]"). Rather, the ALJ must review and synthesize the record in its entirety and make findings about what the evidence shows. See 20 C.F.R. § 404.1520b ("After we review all of the evidence relevant to your claim we make findings about what the evidence shows.").

The ALJ's decision contains discussion of the limitations associated with all of Claimant's impairments, including his cardiac impairment. (Tr. 21-29). For example, the ALJ discussed inconsistency between Claimant's claims regarding shortness of breath and the lack of examination findings referring to shortness of breath. (Tr. 25). The evidence cited provides substantial support for the ALJ's conclusion. (See, e.g., Tr. 528 (normal cardiac findings aside from murmur, normal lung findings), 869 (normal cardiac and lung findings), 913 (normal cardiac findings, aside from murmur, normal lung findings), 1037 (no distress, normal lungs), 1074 (normal cardiac findings, aside from murmur, normal lung findings), 1397 (no respiratory distress, normal lung and cardiac findings), 1738 (same), 1801 (same), 1906 (no cardiac complaints, normal pulmonary effort, no distress, normal breath sounds), 2016 (same)). The ALJ noted improvement in Plaintiff's cardiac impairment with treatment in June 2020 and July 2020. (Tr. 25 (citing Tr. 1198, 1305)). The ALJ also discussed September 2020 notes showing both normal gait findings and a lack of evidence of the use of an assistive device. (Tr. 25 (citing 2162)).

Notably, the ALJ did not limit his discussion to the evidence that ultimately supported his conclusions. He acknowledged and discussed evidence that arguably conflicted with what he eventually found, including the evidence of hospitalization due to chest pains and shortness of

13

breath. However, as required, the ALJ analyzed and weighed the evidence in the record as a whole, resolving conflicts appropriately and explaining his rationale for doing so. (Tr. 21-29). Claimant has failed to show error in the ALJ's RFC assessment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that for the reasons above, Claimant's Motion for Summary Judgment, (Doc. No. 13), is DENIED; the Commissioner's Motion for Summary Judgment, (Doc. No. 15), is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: September 26, 2022

Frank D. Whitney
United States District Judge